EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Bonifacio López Rivera<br><br>Apelante<br><br>v.<br><br>Administración de Corrección<br><br>Apelada | Apelación<br><br>2008 TSPR 121<br><br>174 DPR _____ |

Número del Caso: AC-2007-47

Fecha: 15 de julio de 2008

Tribunal de Apelaciones:

      Región Judicial de San Juan Panel III

Jueza Ponente:

      Hon. Migdalia Fraticelli Torres

Abogado de la Parte Apelante:

      Lcdo. Jesús Faisel Iglesias

Oficina del Procurador General:

      Lcdo. Reinaldo Camps Del Valle
      Procurador General Auxiliar

Materia: Revisión procedente de Administración de Corrección

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Bonifacio López Rivera

    Apelante

      v.                                AC-2007-47

Administración de Corrección

    Apelada

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 15 de julio de 2008.

En el caso de epígrafe tenemos la oportunidad de aclarar si el procedimiento de acción inmediata que dispone la Sección 3.17 de la Ley de Procedimiento Administrativo Uniforme faculta a las agencias a formular, mediante reglamentación, parámetros temporales para sus procesos adjudicativos que se desvíen de las garantías procesales mínimas establecidas en la referida ley. Por entender que dicha facultad no se desprende de la referida disposición, concluimos que la Regla 20 del Reglamento Disciplinario de la Administración de Corrección -que dispone un término de cinco (5) días calendario para solicitar la reconsideración de las sanciones disciplinarias impuestas contra los

confinados– es nula por contravenir la Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme.

**I**

El 17 de marzo de 2006, el Sargento Edwin Martínez (en adelante, Sargento Martínez) se encontraba de guardia en el segundo piso de la Institución de Máxima Seguridad de Ponce. Los oficiales del Cuadrante D-2 de la institución penal informaron al Sargento Martínez sobre cierta conducta sospechosa que exhibía el confinado Bonifacio López Rivera (en adelante, señor López Rivera), quien se encontraba en su celda. Al observar la forma en que el señor López Rivera se comportaba y movía su cuerpo, el Sargento Martínez sospechó que el confinado había utilizado sustancias controladas.

Por tal motivo, el funcionario de la institución penal entró a la celda y encontró en el piso una caja de cigarrillos que tenía en su interior una jeringuilla, así como un pomo de ungüento antibiótico y un sobre plástico pequeño con dos envolturas que contenían una sustancia desconocida. Dicha evidencia fue ocupada sin que el señor López Rivera presentara resistencia. Tras realizar el análisis químico correspondiente, se determinó que las sustancias ocupadas eran heroína y cocaína.

A raíz de esos hechos, el Sargento Martínez presentó un informe disciplinario que culminó con la presentación de una querella administrativa contra el señor López Rivera por infringir las normas del Reglamento Disciplinario de la Administración de Corrección que prohíben la posesión,

introducción, uso, venta o distribución de sustancias controladas en una institución carcelaria. El Oficial Examinador celebró la vista administrativa correspondiente. Aquilatada la prueba, dictó resolución en la que determinó que el señor López Rivera cometió los actos imputados en la querella. Se le impuso como sanción la cancelación del cien por ciento (100%) de la bonificación por buena conducta acumulada entre el mes anterior a la comisión del acto prohibido y la fecha de la resolución. Además, en la resolución se ordenó la segregación disciplinaria del señor López Rivera por un término de sesenta (60) días.

Dicha resolución le fue notificada al señor López Rivera el 28 de marzo de 2006. La misma apercibía al confinado de su derecho a solicitar reconsideración ante la Oficina de Asuntos Legales dentro de un término de "cinco días laborales" [sic], contados a partir de la notificación de la resolución. Para ello, debía requerir un formulario para solicitar la reconsideración al Oficial de Querellas de la agencia administrativa.

Así las cosas, el señor López Rivera presentó una solicitud de reconsideración el 10 de abril de 2006, es decir, trece (13) días naturales después de la notificación. El 27 de abril de 2006, la Administración de Corrección determinó no acoger la solicitud de reconsideración porque se presentó fuera del término de cinco (5) días calendario establecido para ello en la Regla 20 del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y

Comunitarios, Reglamento Núm. 6994 de 29 de julio de 2005 (en adelante, Reglamento Disciplinario).

Insatisfecho, el señor López Rivera acudió en revisión judicial ante el Tribunal de Apelaciones. Alegó que el Reglamento Disciplinario, al establecer un término de cinco (5) días calendario para solicitar reconsideración de una determinación de la agencia, violaba su debido proceso de ley y contravenía las disposiciones de la Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2165, que dispone un término de veinte (20) días para que la parte adversamente afectada por una resolución de una agencia pueda pedir la reconsideración de la misma.

El foro apelativo confirmó la resolución recurrida y resolvió que "la naturaleza de la función que cumple la Administración de Corrección y las particulares circunstancias en las que debe operar la colocan entre las agencias que pueden reclamar las excepciones contenidas en la Ley de Procedimiento Administrativo Uniforme para el manejo de emergencias y de situaciones de acción inmediata". Por tanto, determinó que la desviación de los parámetros temporales era razonable y se ajustaba al mínimo exigido por el debido proceso de ley.

Aún inconforme, el señor López Rivera acude ante este Tribunal y nos solicita que revoquemos el dictamen recurrido. En síntesis, aduce que erró el foro apelativo al confirmar la resolución emitida por la Administración de Corrección, dado que la mencionada entidad pública no es una de las agencias exentas de cumplir con lo dispuesto en

la Ley de Procedimiento Administrativo Uniforme en cuanto a los términos para solicitar la reconsideración. En vista de ello, sostiene que la disposición del Reglamento Disciplinario en controversia, así como la determinación de que las circunstancias particulares de este caso constituyen una situación de emergencia, adolecen de nulidad por ser arbitrarias y contrarias a la ley.

Examinado el recurso, acordamos expedir. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. secs. 2101 *et seq.* (en adelante, LPAU) fue aprobada con el propósito de sistematizar y crear un cuerpo de reglas mínimas que toda agencia debe observar al formular sus reglamentos y al llevar a cabo sus procedimientos adjudicativos. Para lograr estos objetivos, la LPAU sustituyó los procedimientos administrativos que eran incompatibles con sus preceptos y ordenó el manejo de tales asuntos de manera consistente con sus disposiciones. Olivo v. Secretario, res. 10 de marzo de 2005, 2005 T.S.P.R. 27; Perfect Cleaning v. Cardiovascular, res. el 16 de agosto de 2004, 2004 TSPR 138; Asoc. Dueños Casas Parguera, Inc. v. J.P., 148 D.P.R. 307 (1999). Por tanto, las disposiciones de la LPAU desplazan y tienen predominio sobre toda regla de una agencia que sea contraria a ésta. Es por ello que, de ordinario, las agencias vienen obligadas a conducir sus

procedimientos de acuerdo con la mencionada ley. Perfect Cleaning v. Cardiovascular, *supra*.

La Sección 3.1 de la LPAU exige a toda agencia que deba adjudicar formalmente una controversia a dirigir sus procedimientos de conformidad con sus disposiciones. 3 L.P.R.A. sec. 2151; Pagán Ramos v. F.S.E., 129 D.P.R. 888 (1992). En cuanto al proceso de adjudicación formal, la LPAU incorporó las siguientes garantías procesales mínimas: (a) derecho a una notificación oportuna de los cargos; (b) derecho a presentar evidencia y a ser oído; (c) derecho a un adjudicador imparcial; (d) derecho a que la decisión esté basada en el expediente oficial; y (e) derecho a solicitar la reconsideración y la revisión judicial de una determinación administrativa adversa. 3 L.P.R.A. secs. 2151, 2165.

En armonía con lo anterior, las agencias deben adoptar un reglamento para regular sus procedimientos adjudicativos de conformidad con la LPAU y el debido proceso de ley, siempre velando porque no se impongan requisitos que contravengan las pautas establecidas por el estatuto. 3 L.P.R.A. sec. 2152. Por tanto, las agencias cobijadas por la LPAU carecen de autoridad para adoptar reglamentación que establezca requisitos adicionales o distintos relacionados con la reconsideración o revisión judicial que dispone la referida ley. Véase Franco v. Depto. de Educación, 148 D.P.R. 703 (1999).

De hecho, la Sección 2.7 de la LPAU dispone que una regla o reglamento aprobado después de la fecha de

efectividad de dicha ley será nulo si no cumple sustancialmente con sus disposiciones. 3 L.P.R.A. sec. 2127. Por consiguiente, hemos establecido que cualquier actuación de una agencia que se haga en contravención de las pautas mínimas impuestas por la referida ley no puede prevalecer. Véase Comisionado de Seguros v. A.E.E.L.A., res. 5 de junio de 2007, 2007 TSPR 112. De conformidad con ello, el profesor Demetrio Fernández ha expresado que "[e]l proceso de reglamentación seguido por las agencias cubiertas por la Ley de Procedimiento Administrativo Uniforme tiene que ajustarse a lo delineado en esa ley. Si la regla o reglamento no se conforma y ajusta a lo establecido por dicha ley carecerá de fuerza de ley y estará sujeto a que se cuestione judicialmente. La agencia está impedida de sustituir el procedimiento de la ley so pena de que se vicie de nulidad la reglamentación adoptada". D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Ed. Forum, 2001, pág. 120.

Ahora bien, la Sección 3.17 de la LPAU faculta a las agencias a utilizar "procedimientos adjudicativos de emergencia en una situación en que exista un peligro inminente para la salud, seguridad y bienestar público o que requiera acción inmediata de la agencia". 3 L.P.R.A. sec. 2167. En esos casos, la agencia debe tomar sólo aquella acción que sea necesaria y justifique el uso de una adjudicación inmediata. Id. Es decir, la agencia puede prescindir de los parámetros temporales que exige la LPAU

para los procedimientos ordinarios de adjudicación formal cuando las circunstancias particulares del caso constituyan alguna de las excepciones mencionadas. A su vez, dicha disposición también establece que, en procedimientos adjudicativos de esta naturaleza, "la agencia deberá dar aquella notificación que considere más conveniente, a las personas que sean requeridas a cumplir con la orden o resolución. La orden o resolución será efectiva al emitirse". *Id.*

El procedimiento administrativo de acción inmediata establecido por la Sección 3.17 de la LPAU constituye, en esencia, una flexibilización del derecho a ser oído. Véase D. Fernández Quiñones, *supra*, pág. 200. Ello es permisible dado que el debido proceso de ley en el ámbito del derecho administrativo carece de la rigidez que se le reconoce en la esfera penal. López v. Asoc. de Taxis, 142 D.P.R. 109 (1996); A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875, 882 (1974).

No obstante, el procedimiento adjudicativo de emergencia iniciado en virtud de la Sección 3.17 debe limitarse a lo necesario, a la luz de lo que requiera la situación de peligro. A su vez, en aquellos casos en que se invoque esta disposición es necesario que la agencia complete el procedimiento ordinario una vez cesen las circunstancias peligrosas que justificaron su desvío del cauce administrativo ordinario en primer lugar, según lo exige el inciso (e) de la referida Sección 3.17. 3 L.P.R.A. sec. 2167.

Partiendo de este marco normativo, procedemos a atender la controversia ante nuestra consideración.

**III**

Sabido es que el alcance de la Ley de Procedimiento Administrativo Uniforme es amplio y abarcador. Aplica a todo procedimiento administrativo ante todas aquellas agencias que no estén exceptuadas por la propia Ley. El estatuto pretendió excluir de su ámbito sólo a un pequeño número de entidades expresamente identificadas en ella y entre las cuales no se encuentra la Administración de Corrección. 3 L.P.R.A. sec. 2101; Pagán Ramos v. F.S.E., *supra*. Por consiguiente, la LPAU aplica a la Administración de Corrección, pues este es un organismo gubernamental con poderes adjudicativos y de reglamentación que no ha sido excluido expresamente de la LPAU.

La Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. 1101 *et seq.,* faculta al Administrador de dicha agencia a adoptar un reglamento que establezca los actos perpetrados por los confinados que constituyan mala conducta y la sanción correspondiente. 4 L.P.R.A. sec. 1163. De conformidad con la facultad conferida por dicha ley habilitadora, y en cumplimiento con las formalidades para la reglamentación cuasi-legislativa establecida por la LPAU, la Administración de Corrección promulgó el Reglamento Disciplinario en controversia. El Reglamento Disciplinario establece tanto la estructura del aparato sancionador como las normas sustantivas y los

procedimientos que éste habrá de seguir para propiciar un ambiente de seguridad y orden en las instituciones correccionales del país. <u>López Leyro v. ELA</u>, res. 25 de enero de 2008, 2008 TSPR 8.

En el caso de autos, el señor López Rivera impugna la validez de la Regla 20 del Reglamento Disciplinario, la cual regula lo concerniente a la reconsideración de las decisiones emitidas por el Oficial Examinador de Vistas Disciplinarias. En lo pertinente, dicha regla dispone lo siguiente:

> La parte afectada por la determinación emitida por el Oficial Examinador de Vistas Disciplinarias, o por el Comité de Disciplina Institucional podrá solicitar una reconsideración dentro del término de cinco (5) días calendarios contados a partir de la fecha de la notificación de copia de la resolución.

En esencia, el señor López Rivera alega que el término de cinco (5) días calendario para solicitar la reconsideración que concede la referida disposición contraviene la Sección 3.15 de la LPAU. Nótese que la Sección 3.15 dispone que la parte adversamente afectada por una resolución u orden parcial o final de una agencia podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la decisión administrativa, presentar una moción de reconsideración. 3 L.P.R.A. sec. 2165.[1] Por tanto, el señor López Rivera

---

[1] A su vez, la mencionada sección de la LPAU dispone que si la agencia rechaza de plano o no actúa dentro de los quince (15) días de haber presentado la moción de reconsideración, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde

sostiene que la Regla 20 del Reglamento Disciplinario, al contemplar un término mucho menor al dispuesto por la referida sección de LPAU, adolece de nulidad por no cumplir sustancialmente con las disposiciones de la LPAU.

Por su parte, el Procurador General alega que la Sección 3.17 de la LPAU permite a una agencia desarrollar procedimientos adjudicativos más restrictivos ante circunstancias de emergencia o situaciones que requieran acción inmediata. En vista de ello, sostiene que las circunstancias de las instituciones correccionales del país ameritan la adopción de este tipo de procedimientos con términos reducidos o perentorios que permitan la pronta vindicación de las normas violentadas por aquellos confinados que ponen en riesgo la seguridad y convivencia pacífica de la sociedad carcelaria en general.

Es menester señalar que la LPAU no provee definiciones ni parámetros para precisar qué situación o circunstancias justificarían que una agencia se aparte del procedimiento adjudicativo ordinario e invoque la mencionada Sección 3.17, 3 L.P.R.A. sec. 2167. Sin embargo, es evidente que para que la actuación sumaria esté justificada debe estar en juego un interés apremiante del Estado en preservar la

que expiren esos quince (15) días, según sea el caso. 3 L.P.R.A. sec. 2165. Nótese que aunque el derecho a solicitar la reconsideración no se deriva de la cláusula constitucional del debido proceso de ley, ésta es una garantía procesal mínima que reconoce la LPAU para brindarle a los foros adjudicadores la oportunidad de enmendar o corregir los errores en que hubiese incurrido. Véase Kelly Temporary Services v. F.S.E., 142 D.P.R. 290 (1997).

salud, la seguridad o el bienestar de la ciudadanía y que dicho interés no pueda protegerse mediante los mecanismos del proceso gubernamental ordinario.

En el presente caso, se desprende del expediente que la Administración de Corrección no utilizó un procedimiento adjudicativo excepcional a base de la Sección 3.17 de la LPAU, sino que adoptó **mediante reglamentación** unos términos más cortos a los parámetros temporales mínimos establecidos por la Sección 3.15 de la referida ley. Según el Procurador General, dicha reglamentación se justifica a base de que las características de los procesos disciplinarios y la naturaleza de las medidas disponibles implican la necesidad de que se utilice un procedimiento interno distinto al convencional.

No obstante, y contrario a lo que sugiere el Procurador General, la Sección 3.17 no faculta a las agencias a adoptar **mediante reglamentación** términos más cortos a los establecidos por la LPAU para situaciones en que la agencia se ve obligada a tomar decisiones de acción inmediata. El procedimiento de acción inmediata es un mecanismo excepcional que permite a las agencias desviarse del cauce ordinario de adjudicación que garantiza el derecho al debido proceso de ley y la LPAU en situaciones extraordinarias que impliquen la existencia de un peligro inminente para la salud, la seguridad y el bienestar público o que requiera la acción inmediata de la agencia. 3 L.P.R.A. sec. 2167. Como hemos señalado, para que la actuación sumaria esté justificada debe estar en juego un

interés apremiante del Estado y que la dilación que conllevaría el procedimiento ordinario permitiría que ocurra lo que la acción sumaria pretende evitar; a saber, daños a la salud, la seguridad o el bienestar de la ciudadanía. El criterio rector para determinar si se justifica utilizar el procedimiento de acción inmediata al amparo de la mencionada Sección 3.17 es si la situación particular ante la agencia configura una circunstancia extraordinaria que requiera prescindir, en ese caso en específico, de los requisitos reglamentarios y estatutarios para los procedimientos ordinarios ante la agencia en cuestión.

En el caso de autos, la Administración de Corrección intenta enmarcar y justificar la validez de la Regla 20 del Reglamento Disciplinario al amparo de la Sección 3.17 de la LPAU, la cual permite a las agencias prescindir del cauce administrativo de adjudicación ordinaria en situaciones de emergencia o de acción inmediata. No obstante, la Sección 3.17 no provee autorización alguna para legislar, sino para adjudicar de manera excepcional y sumaria en situaciones particulares que justifiquen la acción inmediata de la agencia. Por tanto, la referida disposición **no autoriza a las agencias a legislar normas reglamentarias que contravengan directamente las garantías procesales mínimas que establece la LPAU**, como por ejemplo, los términos para acudir en reconsideración que contempla la Sección 3.15 de la referida ley. El cauce administrativo ordinario es, en efecto, el contemplado por el reglamento de la agencia, por

lo que éste debe cumplir cabalmente con todas las garantías mínimas que establece la LPAU. Claramente, el procedimiento administrativo objeto de controversia no constituyó una excepción válida al derecho a ser oído, por lo que tampoco se puede enmarcar en el contexto de la mencionada Sección 3.17 de la LPAU.

Debemos tener presente que ni la LPAU ni la ley orgánica de la Administración de Corrección, *supra*, autorizan a la agencia a desviarse por vía reglamentaria de los parámetros temporales que establece la Sección 3.15 de la LPAU para los supuestos en que una parte solicita la reconsideración. Por tanto, es evidente que el procedimiento administrativo ordinario que dispone la Regla 20 del Reglamento Disciplinario para solicitar la reconsideración de decisiones adversas de la Administración de Corrección adolece de nulidad, ya que reduce el término mínimo que garantiza la LPAU de veinte (20) a cinco (5) días calendario sin autoridad legal alguna. Dicha conclusión es inevitable, pues los procedimientos disciplinarios de los confinados se rigen forzosamente por la LPAU. Esto así, pues la referida entidad pública no es una de las agencias expresamente excluidas por el referido estatuto. Pagán Ramos v. F.S.E., *supra*.

Por último, es menester señalar que incluso si la Administración de Corrección hubiese invocado el procedimiento de acción inmediata al amparo de la Sección 3.17 de la LPAU para desviarse de una norma reglamentaria que cumpliese con los preceptos de la LPAU, de todas

maneras tendríamos que concluir que la acción administrativa de denegar el derecho a solicitar la reconsideración en el presente caso es inválida y contraria a las garantías procesales mínimas que establece la referida ley. A pesar de que reconocemos la posibilidad de que surjan supuestos disciplinarios que requieran la acción inmediata de la Administración de Corrección para preservar la armonía y la seguridad institucional en las cárceles del país, en el presente caso no se ha presentado justificación alguna para prescindir de las garantías procesales mínimas que provee el ordenamiento administrativo vigente.

Ciertamente, la justificación de plazos aplazados y perentorios en los procesos disciplinarios contra confinados puede surgir de la necesidad de que se tomen medidas aceleradas para penalizar acciones y comportamientos indebidos que afecten la seguridad institucional de la entidad carcelaria. No obstante, no se ha presentado evidencia de que la conducta imputada al señor López Rivera suponga un riesgo de fuga o un peligro inminente de agresión contra los demás confinados o cualquier otro supuesto que requiera la acción inmediata y sumaria de la agencia o que justifique la desviación de los parámetros temporales que exige la LPAU. Resulta evidente, pues, que la acción disciplinaria contra un confinado por haber utilizado sustancias controladas no amerita preterir los mecanismos procesales dispuestos en la LPAU, pues no se trata de un peligro inminente para la seguridad general de la población penal.

**IV**

Por todo lo anterior, concluimos que la Administración de Corrección debió concederle al señor López Rivera las garantías procesales mínimas y los parámetros temporales que establece la Ley de Procedimiento Administrativo Uniforme, incluyendo el término de veinte (20) días para solicitar la reconsideración que provee la Sección 3.15 de la referida ley. Por consiguiente, se expide el auto y se revoca la sentencia dictada por el Tribunal de Apelaciones.

En vista de ello, y por virtud de la Sección 2.7 de la LPAU, decretamos la nulidad de la Regla 20 del Reglamento Disciplinario. A su vez, ordenamos al Oficial Examinador de la Administración de Corrección a evaluar la solicitud de reconsideración presentada oportunamente por el señor López Rivera para que determine si la acoge en sus méritos dentro del término de quince (15) días desde que advenga final y firme esta sentencia, de conformidad con la Sección 3.15 de la referida ley. De no acoger la mencionada reconsideración de la sanción disciplinaria impuesta, comenzarán a discurrir los términos de revisión judicial que se establecen en la misma al concluir el referido término.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Bonifacio López Rivera

    Apelante

       v.                 AC-2007-47

Administración de Corrección

    Apelada

SENTENCIA

San Juan, Puerto Rico, a 15 de julio de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto y se revoca la sentencia dictada por el Tribunal de Apelaciones. En vista de ello, y por virtud de la Sección 2.7 de la LPAU, se decreta la nulidad de la Regla 20 del Reglamento Disciplinario. A su vez, se ordena al Oficial Examinador de la Administración de Corrección a evaluar la solicitud de reconsideración presentada oportunamente por el señor Bonifacio López Rivera para que determine si la acoge en sus méritos dentro del término de quince (15) días desde que advenga final y firme esta sentencia, de conformidad con la Sección 3.15 de la referida ley. De no acoger la mencionada reconsideración de la sanción disciplinaria impuesta, comenzarán a discurrir los términos de revisión judicial que se establecen en la misma al concluir el referido término.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo